# UNITED STATES DISTRICT COURT
### for the
### Eastern District of North Carolina

FILED

MAR 2 1 2024


ETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) |
| 141 HL Smith Road Wilmington, North Carolina 28411 | |

Case No. 7:24-mj-1056-RJ

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ North Carolina _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 641 | Theft of Government Property |

The application is based on these facts:

See attached Affidavit of Marine Corps CID Criminal Investigator Phillip C. Moates.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Phillip C. Moates, Marine Corps CID Criminal Investigator
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: **March 21 2024**

*Judge's signature*

City and state: Wilmington, NC

ROBERT B. JONES, JR., United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

IN THE MATTER OF THE SEARCH
OF THE PREMISES LOCATED AT

Case No.: 7:24-mj-1056-RJ

141 HL Smith Road
Wilmington, NC 28411

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A

## WARRANT TO SEARCH AND SEIZE

I, Phillip C. Moates, being first duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a warrant to search the premises located at 141 HL Smith Rd, Wilmington, NC 28411 (SUBJECT PREMISES), described more fully in Attachment A, for the things described in Attachment B. . I also make this affidavit in support of a warrant to search the person known as Daniel J. CRAFT for the things described in Attachment B The SUBJECT PREMISES is the residence of Daniel J. CRAFT.

2. In May of 2021, I was assigned full duties as a Criminal Investigator (GS-1811) for the Criminal Investigation Division (CID), Provost Marshal's Office, Marine Corps Base Camp Lejeune, NC. In April of 2022, I attended the Criminal Investigation Division Special Agent Course at Fort Leonard Wood, Missouri. Prior to becoming a CID Agent, in January of 2010 I began my Law Enforcement career

1

when I attended Basic Law Enforcement Training at Brunswick Community College, Leland, NC. In May of 2011, I began working at Landfall Associates, Wilmington, NC, as a Security Officer Supervisor. My primary duties involved reporting and investigating road accidents, and any unlawful activities; investigated all offenses, accidents, and incidents; maintained and prepared all paperwork, and reviewed all legal documents submitted by officers. In January of 2013, I attended the Marine Corps Civilian Police Academy, Camp Johnson, NC, and was assigned duties as a Marine Corps Civilian Police Officer for the Provost Marshal's Office, Marine Corps Base Camp Lejeune, NC. In September of 2016, I attended the Intelligence Analysis of the Beat, Southern Police Institute. In September of 2017, I was assigned duties as an Apprentice Criminal Investigator for the Provost Marshal's Office, Marine Corps Base Camp Lejeune, NC, where my primary duties involved conducting investigations surrounding Domestic Violence, Aggravated Assaults, Burglary/Housebreakings, Larcenies, Credit Card Crimes, Narcotics, Sexual Assaults, and collateral misconduct. In October of 2017, I attended the Reid Technique of Investigative Interviewing and Advanced Interrogation Techniques, Marine Corps Base Camp Lejeune, NC. In December of 2017, I was promoted to Field Training Officer within the Provost Marshal's Office. In January of 2019, I attended the Federal Bureau of Investigations Child Abduction Course. In May of 2023, I attended the Federal Bureau of Investigations Crisis Negotiation Course.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4. Since the affidavit is being submitted for the limited purpose of securing a search and seizure warrant, I have not included each and every fact known to me concerning this investigation. Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 641 – Theft of Government Property, are ongoing, and there is evidence and instrumentalities of these violations located at the SUBJECT PREMISES and on CRAFT.

## RELEVANT STATUTES

5. Title 18 U.S.C. § 641 states: Anyone who embezzles, steals, purloins, or knowingly converts to their use or the use of another, or without authority, sells, conveys, or disposes of any record, voucher, money, or something of value of the United States or any department or agency thereof, or any property made under contract for the Government; or whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted — shall be fined or imprisoned.

## PROBABLE CAUSE

7. This affidavit is submitted in support of a search warrant involving Daniel J. CRAFT who took receipt of and sold an array of stolen military property owned by Marine Air Group 29 (MAG-29), 2d Marine Air Wing (MAW), Marine Corps Air

3

Station (MCAS) New River, NC, from Sgt Timothy L. Hughes, MAG-29, 2d MAE, in violation of Title 18 U.S.C. § 641.

8. The information contained in this affidavit is based on my knowledge of the facts and evidence obtained during USMC CID's investigation of stolen military property from MAG-29, 2d MAW, and comes from my personal observations, my training and experience, and information obtained from other law enforcement agents and witnesses.

9. USMC CID initiated this investigation on November 27, 2023, after Maj Eric J. Fleegle, USMC, MAG-29, 2d MAW, reported approximately six hundred fifty-six (656) Government issued bayonets were missing from a CONEX box in the vicinity of Building AS- 4145, MCAS New River, NC. Maj Fleegle related the last inventory of the bayonets was conducted in September 2022, and the last time he visually inspected the crates containing the bayonets was on July 21, 2023. The total loss value was reported to be approximately $79,966.40.

10. A screening questionnaire was conducted on December 13, 2023, with Marines from the Consolidated Armory, MCAS New River, NC. Cpl Jacob C. Jones, USMC, MAG-29, 2d MAW, and LCpl Jefferson P. Tubach, USMC, MAG-29, 2d MAW, provided answers indicating they suspect Sgt Timothy L. Hughes, USMC, MAG-29, 2d MAW, as the individual who took the missing bayonets.

11. Cpl Jones was interviewed and stated on November 5, 2023, he witnessed Sgt Hughes carry a black trash bag out of the armory. Cpl Jones related this was normal behavior for Sgt Hughes and never questioned it. Cpl Jones related

4

throughout 2023 he witnessed Sgt Hughes carry black trash bags full of unknown items out of the armory approximately 10-15 times. Cpl Jones was unable to provide specific dates. Additionally, Cpl Jones stated on one occasion Sgt Hughes set one of the trash bags down by a desk within Building AS-4145. Cpl Jones went to see what was in the trash bag and related he felt what he believed to be the standard issue M18 Duty Holster with his hand through the bag. Cpl Jones stated he did not want to open the bag with Sgt Hughes being present. Cpl Jones recalled around the time, the MAG-29 Armory was missing upwards of 300 or more M18 holsters. Cpl Jones also stated the armory had accountability of only 46 magazines for the M18 Service Pistol and estimated the armory should have 900-1000 magazines. Cpl Jones furthermore related he was aware of two more suspicious incidents involving Sgt Hughes. Cpl Jones stated around the end of October to early November 2023, Sgt Hughes called him and asked for his Intrusion Detection System pin which would allow him access to the armory. Cpl Jones related he provided Sgt Hughes the pin but, felt this was strange as Sgt Hughes had his own Intrusion Detection System pin. Furthermore, Cpl Jones stated he witnessed Sgt Hughes "cleaning out" the CONEX box, located beside the armory, earlier on the same day.

12. LCpl Tubach directly stated he suspected Sgt Hughes of taking the bayonets. LCpl Tubach stated he witnessed Sgt Hughes inside the CONEX box, that contained the bayonets, on November 22, 2023. LCpl Tubach recalled Sgt Hughes denying assistance when asked and stating he was "just making sure it was locked." LCpl Tubach related he found this occasion suspicious due to the fact the CONEX

5

boxes lock from the exterior and would not have to be opened to be locked. LCpl Tubach related multiple other times Sgt Hughes acted suspicious in nature. LCpl Tubach stated he witnessed Sgt Hughes walk out of the armory with black trash bags, approximately 4-5 times about two to three months prior to the Larceny of the Bayonets. LCpl Tubach believed Sgt Hughes was trying to do it discreetly. Upon further questioning, LCpl Tubach recalled another occasion on October 28, 2023, Sgt Hughes sent a variety of text messages to LCpl Tubach requesting assistance with loading military equipment into the bed of Sgt Hughes' vehicle. LCpl Tubach provided the messages, which revealed Sgt Hughes sent a text message to LCpl Tubach at 0857 on October 28, 2023, which read "Hey, bud. Sorry to text early on a weekend. I was going to see if you aren't busy could you do me a huge favor and meet me at the shed today around noonish so I can get the rest of those racks and boxes? I just need help loading the racks up into the truck." LCpl Tubach agreed to assist Sgt Hughes under the impression of Sgt Hughes was instructed to deliver the equipment to units who need them.

13. On December 21, 2023, a review was conducted of the MCAS New River, NC, Curtis Gate closed circuit television (CCTV) footage, which revealed Sgt Hughes exited MCAS New River, NC, Curtis Gate at (1240:42), on October 28, 2023. Sgt Hughes appeared to be hauling Military Rifle Racks, Pistol Racks, and Metal Boxes in the bed of his vehicle. This vehicle observed transporting the military equipment matched the same vehicle Sgt Hughes entered the installation with at (1157:00) on October 28, 2023, as identified with Defense Biometric Identification System.

14. On December 21, 2023, Mr. Logan Hayes Clifford, Civ, 102 Turtle Creek Court, Jacksonville, NC, agreed to provide footage from his Ring Doorbell for October 28, 2023, to assist with the investigation. A review of the footage revealed a vehicle matching Sgt Hughes' vehicle description, crossed in front of the residence of Mr. Clifford's at (1453:16), on October 28, 2023, approximately 2 hours 12 minutes and 44 seconds after Sgt Hughes exited the Curtis Gate, MCAS New River, NC. The vehicle's truck bed appeared to be empty and heading into the direction of Sgt Hughes' residence located at 106 Turtle Creek Court, Jacksonville, NC.

15. The estimated time from Sgt Hughes leaving MCAS New River, NC, and arriving at his residence is 2 hours 12 minutes and 44 seconds. The last time Sgt Hughes was seen throughout the time frame was at (1324:48), which in, he passed Hampstead Country Store, 14565 Highway 17 N, Hampstead, NC, which was documented by CCTV footage from the store.

16. On December 19, 2023, a review of an eBay account "ccards-llc" was conducted after Maj Fleegle reported he found the eBay account while searching for the missing bayonets for sale online. The review was utilized with LeadsOnline, which revealed the eBay user ID, email address, and phone number belonged to Mr. Daniel J. CRAFT, danieljcraft18@gmail.com, (919) 827-5740, located in Wilmington, NC. The account was listing military equipment, some of which appeared similar to the missing military equipment from the MCAS New River, NC, Consolidated Armory. The last time Sgt Hughes was seen, on October 28, 2023, was approximately

6.1 miles away from the address of 141 H L Smith Road, Wilmington, NC, residence of Daniel J. CRAFT, Civ.

17. The eBay account listed various military equipment used by the United States Marine Corps for resale such as:

- Blue Force 2-point Combat Rifle Sling Black USMC

- ACOG RCO Sight Mount Picatinny Rail Adapter

- USMC Larue Tactical ACOG / RCO Quick Detach Scope Mount

- Rib Rail Covers, PVS-14 Accessories, US Military Universal Tan Rifle Small Arms Sling

- USGI A2/A3 Detachable Carry Handle, Norotos II 2 Rhino Mount

- Trijicon Scopecoat x2 Fitted for 4x32 ACOG Scope

- Blue Force Tactical Rifle Sling Rail Mount Adapter Loop USMC

- Bianchi M12 Universal Military M9 9MM Pistol Holster

- US M249 Saw Tripod Pintle Mount Adapter, TA91 ACOG 4x32 RCO Kill Flash LIF w/o Flip Cover Anti-Reflection

- USMC Parade Sling OD Green, Right/Left Hand Safariland USGI MHH Kit Sig P320 M17 Holster  Assembly

- USMC Ontario OKC 3S Combat Bayonet Knife and Scabbard

18. Additionally, a Law Enforcement request was submitted to eBay to obtain full account details for "Ccards-llc". The results revealed "Ccards-llc" belonged to Daniel J. CRAFT, who lives at 141 H L Smith Road, Wilmington, NC. Additionally, the results showed CRAFT to be selling similar items that are missing from the

8

armory. To date Mr. CRAFT has sold (65) ACOG RCO Picatinny Rail Mounts, (45) Left and Right leg Drop Holsters, and (87) Bayonets with scabbards for approximately $68,000. It also detailed his IP Address which was queried in an open-source database that traced it to the vicinity of Wilmington, NC.

19. On February 29, 2024, Sgt Hughes was interrogated and confessed to removing the below unknown quantities of military property from MCAS New River, NC, to sell to Daniel J. CRAFT, Civ, in Wilmington, NC:

-Bayonets

-Cleaning Kits

-Night Vision Goggle (NVG) Bags with associated Stock List-3 (SL-3) Gear

-Slings

-5.56 mm magazines

-M9 magazines

-Rifle cages

Sgt Hughes stated the property he removed was located in the shed adjacent to the armory and he obtained approximately $600.00 USD from CRAFT for all of it. Additionally, Sgt Hughes was only able to identify approximate quantities and the total array of items he sold to CRAFT. Sgt Hughes stated he "took a lot of stuff" and didn't sort through it before selling it so there could be more than what he identified. During the interrogation, Sgt Hughes showed law enforcement on Google Maps the intersection of Scott's Hill Loop Rd and Highway 17 South; wherein, Sgt Hughes related he did not remember Mr. CRAFT's exact address, but that he turned onto

9

Scott's Hill Loop Rd from Highway 17 to drop off the stolen property. This affiant knows that the SUBJECT PREMISES is located off of Scott's Hill Road approximately 1.6 miles from Highway 17 South, and approximately .1 miles from the intersection of Scott's Hill Loop Road and HL Smith Road.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21. There is probable cause to believe that things that were once stored on the device may still be stored there. The following facts support my assertion of probable cause:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear, rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the digital device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the digital devices because:

Case 7:24-mj-01056-RJ   Document 1   Filed 03/21/24   Page 12 of 24

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer

Case 7:24-mj-01056-RJ   Document 1   Filed 03/21/24   Page 13 of 24

is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the forensic images consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24. Because several people share the SUBJECT PREMISES as a residence, it is possible that the SUBJECT PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

25. *Manner of execution.* In light of these concerns, I hereby request permission to seize any records, electronic storage mediums, and computer hardware

(including associated peripheral USB digital devices which were imaged with consent) that are believed to contain some or all of the evidence described in the authorization, and to conduct an off-site search of the hardware for the evidence described, if, upon arriving at the scene, the agents executing the search conclude that it would be impractical to search the computer hardware on-site for this evidence.

26. Searching computer systems for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the authorization. Criminals can mislabel or hide files and directories, encode communications to avoid using key words, attempt to delete files to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning areas of the disk not allocated to listed files or peruse every file briefly to determine whether it falls within the scope of the authorization. In light of these difficulties, CID intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

## CONCLUSION

27. I submit that this affidavit supports probable cause for a warrant to search the SUBJECT PREMISES; all vehicles registered/owned/operated by CRAFT; and CRAFT himself, all fully described in Attachment A, and for the items described in Attachment B, which are related to the offenses set forth above, and seizure of such property.

[Remainder of page intentionally left blank.]

28. Based on the foregoing, your affiant respectfully asserts that there is probable cause to believe CRAFT currently possesses and is selling stolen military property from the SUBJECT PREMISES in violation of 18 U.S.C. § 641.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

Agent Phillip C. Moates
Criminal Investigator
Criminal Investigation Division
United States Marine Corps

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this affidavit, this **21** day of **March**, 2024.

ROBERT B. JONES, JR.
UNITED STATES MAGISTRATE JUDGE

16

## ATTACHMENT A

## PREMISES AND PROPERTY TO BE SEARCHED

### The Premises

The premises to be searched is the residence, outbuildings, and other structures located at 141 HL Smith Rd, Wilmington, NC 28411, herein after the SUBJECT PREMISES. The SUBJECT PREMISES is more fully described as a two-story single-family dwelling located in Wilmington, NC. The residence is constructed with blue in color siding throughout. The roof has gray shingles. The first floor of the residence has a front porch with approximately (5) steps to the porch; wherein, the porch contains (4) windows trimmed in white and a brown door for entry to the residence. Additionally, the first floor of the residence contains an attached two-car garage with a white garage door with approximately (16) small windows in the top of the door. The second story of the residence appears to possess approximately (8) windows in the street side of the house. The rear of the residence contains a shed constructed in the same style and design as the SUBJECT PREMISES.

The property to be searched also includes vehicles owned and/or operated by Daniel J. CRAFT, resident/occupant of the SUBJECT PREMISES. CRAFT and his wife are the current owner/registrant/operators of the below listed vehicles:

-2013 Ford F-150, NC Registration: PH683C, VIN: 1FTFX1EF3DKD28063

-2015 Keystone RV, NC Registration: CB73057, VIN: 4YDF35027F4730390

-2006 White Toyota Sienna, NC Registration: PH526E, VIN: 5TDZA23C06S451408

17

-2011 Toyota Camry, NC Registration: TDF9770, VIN: 4T1BF3EKXBU588533

-2015 Hyundai Santa Fe Sport, DE Registration: PC184380, VIN: 5XYZT3LB5FG223067

-Coleman Camper Trailer, Unknown Registration/Production Year, visually c onfirmed by law enforcement to be on CRAFT's property on December 27, 2023, and March 19, 2024.

-Mountaineer by Montana Camper Trailer, Unknown Registration/Production Year, visually confirmed by law enforcement to be on Mr. CRAFT's property on March 19, 2024.

A bird's eye-eye view photograph of the SUBJECT PREMISES obtained from Google Maps is below:



Photographs of the SUBJECT PREMISES' exterior (front of the residence/entrance of residence and approximate 45-degree views of the side of the residence) are below:







Photograph of a 141 HL Smith Property Lines



Photograph of Mr. CRAFT's Ford 2013 F-150 and Coleman Camper Trailer at the SUBJECT PREMISES:



The person to be searched is Daniel J. CRAFT:



21

## ATTACHMENT B

### DESCRIPTION OF ITEMS TO BE SEIZED

All property, items, records, and information at the place described in Attachment A that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18 U.S.C. § 641 – Theft of Government Property, or other items illegally possessed, or property designed for use, intended for use, or used in committing these crimes, pertaining to the following matters:

a. Any and all items that appear to be stolen military property belonging to the MAG-29 armory.

b. Any electronic devices, such as computers, cellular telephones and gaming machines, capable of accessing the internet, along with all data and communications (as described in paragraphs c, d, and e) regardless of physical location, that are capable of being accessed by the electronic device;

c. Any storage medium that are potentially capable of containing records or information, whose seizure and search is otherwise authorized by this warrant (i.e. hard drives, flashdrives, USB thumb drives);

d. Routers, modems, and network equipment used to connect computers to the Internet;

e. Passwords, encryption keys, and other access devices that may be necessary to access the aforementioned electronic devices and storage medium;

f. Proceeds from the sale of stolen Government Property, including United States Currency, to include the seizure of large amounts of currency which investiagtors can later identify as proceeds from the sale of stolen Government Property;

f. Any records related to the ownership of the subject premises or the computers, smartphones, and computer-related media subject to seizure and search.